Bais Yaakov of Spring Valley v. Educational Testing Service, 21-399 and 21-541 I'm the attorney for the common cause of how they equate Bais Yaakov of Spring Valley. First of all, your honors, our first... I should note that Mr. Bellin and I were summer associates together 30 years ago. Oh my goodness, that is a long time ago. That was a long time ago, but anyway. Our first argument, your honors, is that the district court erroneously just denied the class unification motions for the class of the two subclasses. The plaintiff for Bais Yaakov sets forth class-wide evidence, which is the 3 v. 6 testimony of both ETS and Houghton Mifflin Harcourt, which is a non-party in this case at this point. Where they said we did not obtain prior express consent from any of the people on this list. I mean, they said we have two different viewpoints, one from this one and one from the other. They say that. Moreover, the defendants do not come forward with, and the district court found, that there was not a single piece, there was no evidence that any individual person, whether it was thousands of class members or class members, had given prior express consent to get class unification. But what the court said to get that done, what the court concluded, though, was, well, there are complex pieces of evidence that some of the class members had complex pre-existing business relationships with the defendant. And therefore, based on that, they may have, in the midst of those complex business relationships, they may have provided prior express consent to get class unification. Your Honor, our position is that that is pure speculation. This case has gone on for over 90 years. There is not one piece of evidence that any individual, potential customer or customer, gave prior express consent to get class, to get, to get class advertisements. And in fact, this case in U.S., in this court, in U.S. Blue Service in 2015, specifically made clear that there is some burden on a defendant to come forth and present some evidence that somebody has, has, has, you know, to take advantage of this sort of, this sort of, gave this sort of consent. In Regulus Blue Service, the court said, this court said, it's not enough just to speculate that maybe somebody in the class possibly knew of the improper behavior or the improper pricing done by the defendant in that case. There had to be actual evidence that someone did, that someone did know. And here we have no such evidence, Your Honor. So the notion that they have no, even though I, you know, we, we agree that it's the burden of the, of the plaintiff to come forward and prove all the elements of, of, prior to the evidence for class unification. We came forward with this evidence from their 30 recent witnesses. And they came forward with nothing. In the face of that, there's not a predominance issue here, Your Honor. It was pure, Your Honor, it was pure speculation by the district court and by the defendants in this case. And therefore, the district court erred when it said, well, there may have been, the relationship suggests that there may have been this sort of, this sort of consent. There's nothing in the record to support that. And after nine years, we expect there would be. And especially in the middle of the other cases that they relied on. Well, over nine years, the law has changed considerably with regard to solicited and unsolicited faxes, hasn't it? Well, it depends, it depends. Well, we have the D.C. Circuit decision and we have the Gorse decision that says we're bound by it, right? No, the Gorse decision said, Your Honor, respectfully, that the only time a court is bound by the other circuit is when there's a spatial challenge to the validity of the regulation. And here, this is not a spatial challenge. The second circuit specifically said at page 95 of that decision that when you're talking about an individual enforcement action, that is not equivalent to challenging the validity of the regulation. But the regulation now, my understanding is that only an individual who has received an unsolicited fax has a TCPA claim. Is that wrong? That's not wrong, Your Honor, but that's not the regulation that would apply. Well, assuming that the court found that the regulation was properly propagated back in when it first was in 2006, then you have to find you have the only way that the new decision by the FCC could apply would be if the TCPA specifically gave power to the FCC to retroactively undue regulations. And this Court has recognized that absent that clear power given to the agency, an agency can't undo a regulation. But the D.C. Circuit found that it had never had the authority to promulgate that regulation. I understand that, Your Honor, but in the context of an individual enforcement action, which this is, this Court is not bound by that. In other words, our position is that Judge Karras was wrong when he said, I'm bound by the D.C. Circuit's decision. This Court, in the subsequent decision, argued exactly what Judge Karras made his decision. So I'm not playing into that. But this Court made clear that an individual enforcement action were not bound. So what this Court should do at the very least is remand this question back to the district court. I'm just finding that the offer of judgment of $12,000, whatever, to your client moots the proceedings and, therefore, it doesn't have to deal with class certification. As everybody recognizes, Your Honor, that's true. That's its, of course, decision to deny the class certifications. Correct. I'll rest on my brief on that point. But what I will say also is even if the district court was right to deny on the class, regarding the individual issue of permission, our position is that the district court erred when it didn't allow, and we've asked for this, to not allow the plaintiff to get discovery on the issue of whether ETS had any records for any of the other members of any other potential members of the classes. ETS's own counsel admitted in front of Magistrate Judge Smith that many of these people are strangers to us. We don't know them because it's not our taxes. Well, and with regard to your own client, the testimony that was given by Ms. Pilcher about having given the fax number in the past, that wasn't enough to constitute consent from your point of view? No, it's not enough. I mean, the court, Judge Harris found that, and they have not contested that in this case, Your Honor. Just giving a number over is not enough, as this court has also found in a different case in the same name. So that in and of itself would not be enough under this court's process and under the SEC's determinations. So our position is – but the important thing is, Your Honor, again, he did not allow us to do the discovery that we asked for, which was to be able to find out whether the defendant had any records for members of the classes. And by their saying many of these people are strangers to us, it's about as clear as you can get that this information was available and could have been produced, but the district court will not accept it. Is it possible that Harcourt would have had that information about – I mean, apart from the prior relationship between ETS and potential class members? I mean, Harcourt is the one that did the sending, right? Harcourt did the – well, we – But they're not defended here. Yes. Yes. But the thing is, the evidence in the record even shows that at least 54 of the people on their list were people that had no records. That's already in the record. And the only thing that they were able to testify about was that, as the other ones, where they did have them, well, people put their fax numbers. Again, that's not enough. Or at least this is something that should have been dealt with by the district court, and it wasn't. Are we on abuse of discretion review on class certification? You are, Your Honor, except when there's an error of law. And we believe that it was an error of law here for the district court to just say, well, I'm going to speculate that there may have been – there may have been some consent here because they had a relationship essentially with the defendant. This report is saying if anyone – if the defendant has a business relationship with someone, there's no way they could ever have class certification in the TCPA case, which is not – which is not the law. And I don't think that that's correct. But even so, we can get to do our discovery. That would have answered – the judge himself totally based his decision on the fact that there was a prior relationship. But there's evidence in the record that there was significant – there's significant evidence that there were prior relationships with a significant percentage of the class, and the district court did not allow us to do discovery on that. It prevented us from doing so, and it allowed us to do so because we could at least try to move the class certification on those people for whom the defendant and H.H. did not have any records, and we weren't permitted to do that. I could move on to the cross-appeal of the court. Why don't you take a minute to do that? That's a conditional cross-appeal, right? So, Your Honor, you know, our position is that under the regulation, ETS is clearly a sender here. There's no question that these faxes were sent out on behalf of ETS. ETS actually reviewed the faxes, approved the faxes. The courts of appeals have taken different views about that, about what kind of – you know, who constitutes a sender under the statute and the regulation, right? That is correct, Your Honor. And Judge Harris, we believe, correctly used the point in the 6th and 11th circuits, which said that it is not based on an agency principle because, first of all, there's no language included in the regulation that says that. Second of all, the FCC itself, in a brief that is submitted to the 11th circuit when we cited it in our papers, said that the agency principle does not apply. Now, the Supreme Court in this court ever ruled that when an agency submits its legal position in a brief, it's really almost completely binding on everybody unless that position is totally, you know, non-supportive. And that's not the case. It clearly is supportive. The FCC, as the 6th circuit said, as Judge Harris said, actually, when the FCC wants to use the agency principles, it made it clear, and that's not what it did here. The plain language of the regulation does not say anything about the agency, and that's something that we should look at. In addition, the second half talks about someone whose products are advertised. Now, that's a sender as well. Now, we're not taking the position that somehow, that the mere fact, without anything else, that the products are advertised in the facts is enough to make someone a sender. We have more here. We have a plus. It's kind of a my goods are advertised plus. And what is a plus here? They review. They approve. I mean, it's not the exact same analysis under the first half of the regulation as the first half says on behalf of. But our position is that the second half of the regulation, properly interpreted, means that you have to have your product advertised in some connection. You know, the agency has a right to make a prophylactic rule and say, look, the prophylactic rule may encompass people who are not covered by the statute. The Supreme Court in this court has made clear that that's okay. The agency has that authority. Mr. Billin, let's hear from your friend on the other side, Mr. Johnson. Thank you, Your Honor. Jeff Johnson on behalf of Educational Testing Service. And just to sort of get right into it. With respect to Gorshman & Tell, it's easiest to respond to Mr. Billin's concerns by quoting what this court said in Gorshman & Tell's quote. Once the D.C. Circuit invalidated the 2014 order and the solicit facts rule, that will be a binding effect on every circuit. That's 20F4 and 92. That means that, as Your Honor said, the solicit facts rule has been invalid since the day it started. It cannot be enforced against anyone. Now, to try to escape Gorshman & Tell, my colleague says, oh, this is an enforcement action, and Gorshman & Tell is a reserved situation of a subsequent enforcement action. The only person trying to enforce the solicit facts rule in this case is Bayes Yacob. And one thing that's clear is that that rule cannot be enforced. It was void of the issue, and the D.C. Circuit has now bindingly held that it cannot be enforced against anyone. So I think it's very clear that Gorshman & Tell's end of this case, if so far as the question is, must Bayes Yacob prove that the facts were unsolicited in order to recover from any absent class member. So once we sort of cross that threshold, we get into the question of, okay, well, was there enough here that Judge Harris didn't abuse his discretion in choosing not to give his case? As I heard my colleague this morning, he claims that the legal error that he's relying upon to show that Judge Harris abused his discretion was that he relied purely on specification. I think that's deeply unfair to what Judge Harris wrote in his decision and what he did after looking at the facts. To start, Judge Harris specifically said, no, I found that there are many entities who likely consented to facts. Most particularly, he found that the criteria of customers and the criteria of pilot program members who happened to be on the list likely consented because they had back-and-forth facts relationships with ETS and that they had signed up for a pilot program about whether they wanted to purchase the criteria of service. I think it sort of shows the fundamental flaw in Bayes Yacob's claims of speculation, which is to say, show me the line where someone said, I hereby consent to receive facts advertisements. The circuit courts are clear. That is not required. What matters is that there be an express indication that you are willing to receive facts advertisements based on the facts and circumstances. So, for instance, in the Ninth Circuit, in Petitions of Health Source, excuse me, the Third Circuit, leaving your business card or fax number when medical representatives came to talk to you was treated as having been given express consent in that case because, of course, we all know that if you're talking to a salesperson and you give them their fax number and say, sure, let's hear more from you, what that means is you have consented to receive facts advertisements. That highlights the second kind of consent that Judge Harris talked about here, which is consent obtained from HMH customers whose numbers were entered into the database by HMH sales representatives. Again, this is not speculation. This is evidence in the record that Judge Harris relied upon to show that, within that group, there must be people, again, people who gave their fax numbers to salespersons. If you give your fax number to a salesperson in the context of a longstanding sales relationship, how could that not be at least enough evidence of consent to survive summary judgment? We think that we're right and that we have those. And so far from this idea that there's not one person that could have consented to your number, right, just on base speculation, Judge Harris, after considering all of this evidence, carefully concluded that, no, there were a host of entities who likely did consent. Sure, he couldn't pick a specific one, but there's no requirement in the law that you have to be able to say, within this group, that one person must have consented. I hear you might find that for classification. No, the question is, will common issues predominate over individual ones? And once Judge Harris reasonably found that there were many such combinations that reflect the very well-defined groups of entities, he was well within his discretion to decide that resolving all those questions would require precisely the kind of mini-trials that class certification cannot occur in the presence of. So that sort of leaves, I think, the third category of error that they've stuck up. It uses the district code. And I think, in some sense, this is the most unfair of the errors, which is to say, oh, the district court refused to give us additional discovery so that we could move to certify a subclass that contained people who had no information in either the nature case or the ETF database. Except the first point of response to this is that it's irrelevant to the act of discovery ruling that reports the challenge. As he said himself today, there were entities within the discovered 250 sample files for whom it goes to this category of not having the facts in their records. If base.gov had wished to certify a class based upon those entities, it could have done so. It never once sought to do so in this text. When he says that they asked the court for this, no, they asked them. In the hearing before magistrate, they floated the idea that they might seek to certify a subclass on that basis. In their objections of magistrate's orders, though, to this report, they did not raise the issue again. And when they sought to certify a class, they never said, by the way, we would also have certified a class of those who never had a member in the database, but you wouldn't let us because we don't have the information. Again, they had the information. They never sought it. So the question becomes, well, why didn't they seek such a class when they had the information and they could have done so right then? And the answer is fairly obvious, Your Honor. I think the answer is because base.gov got limited to that category. As your question reflected about the conversation with Ms. Pilchik in her testimony, we had a base.gov class phone number. It was not even an appropriate class that was limited or a typical class representative to address the issue of those whose rights seemed quite different than theirs and whose subject criteria defenses that they opposed. And so I think it would be quite remarkable, in fact, and I don't mean to hyperbole, for this court to reverse judge Karras for not giving discovery for a certified class that was never proposed, the information was already present, that they could have gotten if they wanted to, and that frankly it just doesn't even fit their own circumstances. So reverse this case in 2022 based on that sort of a highlight of Monday morning quarterbacking in this decade-old case. So I guess that – there's no questions about the arguments and the appeal. I'm happy to move to the conditional process appeal. Again, we're content. We've paid Dr. Baceoff about $12,000. We think it's very clear under a longstanding precedent from Judge Friendly of all people that we can agree to – There he is. There he is. That we can agree to have judgment entered against us once the case is done away. So there's good and bad answers to those too. But on the question of our conditional process appeal, which, again, only if you need to reach it because you prefer some other aspects, one thing that didn't come up in my colleague's conversation was the text of the statute. The statute says that to be liable under the TCPA, we must, quote, use a fact machine to, quote, send a fax. And I think the Sixth Circuit in Mohawk did a very fine job of sort of explaining why, okay, we've got to keep that in mind when working on this area. And that means that there's two basic ways that you can send a fax. One, you can be the one that gets sent on your machines to send out what they call that dispatching of fax. Or two, you can be the one who says, I would like you to send faxes for me. And you can cause the fax to be sent in that way. I think under that approach, it is beyond doubt and true as a matter of law that ETS did not send the fax. It's understood that ETS did not dispatch the fax. It had no involvement with Westfax. The company that sent out the fax didn't even know Westfax had been pertained, didn't know the fax had went out, wasn't even told about it. If you hire someone to advertise your services, they're acting on your behalf and you impose no limitations and may be included in the list of the ways in which they might do marketing for you is faxing, or at least not excluded is faxing. Haven't you engaged them to act as your agent for purposes of making your presence known in the commercial world? And you review the materials for your trademarks, for example, or for the description of your services and so on. Why aren't you ultimately, potentially at least, responsible? The statute doesn't rule that out, does it? So I think it does in the sense that, in our case, it's very difficult to see how you could say that ETS used a fax machine to send a fax. ETS was not near a fax machine. Well, ETS is a corporation. I mean, you know, they're going to have to rely on individuals or potentially other corporations to send on their behalf. It's true that it is liable to act as agents. Now, of course, my colleague has disclaimed the relevance of agents involved in any of this. But, again, on the facts of this case, it may be true that you expressly hire a fax broadcaster to send out faxes for you. Of course, in that context, the 11th Circuit, the District Court, that should seem to do that. But here, our contract was different, right? Our contract said, we're hiring you for marketing. You're the independent distributor. You have the exclusive right to sell. But we don't know necessarily what Congress thought about that. I mean, you know, the courts are reaching different decisions about it. I mean, and if you were held liable, your client were held liable as a sender, presumably you could get some indemnity from the marketing arm if they were doing something that was improper, right? Because they're supposed to comply with all laws. So it's possible to arrange a contractual arrangement to solve these problems or at least mitigate them. I think it's worth pointing out, normally we don't think that independent contractors at all – the whole reason you hire an independent contractor is because they are able to do the thing that they're good at and they're responsible for how it takes place and you're not. And here we're two steps removed. We hired HMH. We hired them. We entered a contract with them and gave them the exclusive right. We could not market our products in the United States. We gave them the exclusive right and said, market this how you go. Of course, you should comply with the law. It's in our contract. But they chose independently to exercise that executive power through fax advertising. And it's true, as my colleague mentioned, we had the right to review the fax. But you get to the critical point. We did not have the right to review the fax about whether the fax would be sent. We had the right to say, you were describing the criteria in service correctly. You have used our logos appropriately. But once that was done, it is undisputed, and there is testimony from HMH and corporate representatives established, that HMH or ETS could not stop the fax. If we had wanted to and said, we actually disagree, we think your opt-out is noncompliant with the TCPA, we could not have stopped the fax. I think it would be part of the stretch to think that Congress, when it passed the statute that says you cannot use a fax machine to send a fax, what that meant was, you are necessarily liable for all acts of incompetent contractor, even ones that you could not possibly stop, and that you did not expressly contemplate in your deal. So I think that we're going to be— But we don't have to necessarily deal with this. Exactly. As I said, Your Honor, we would be more than happy to have the case go away, but the strain of firmness of Judge Harris is very straightforward, very detailed, very thorough. Thank you. I'm passing. Thank you very much, Mr. Scully. Thank you, Your Honor. Just quickly— And you can take off your mask or leave it on, whatever you want to do. Just quickly, my adversary seems to be suggesting that we should have made a classification motion based on 54—based on the small substantive that the district judge allowed us to do. That would have been inappropriate, Your Honor. We were trying to certify a class of thousands and thousands of people, but the judge said we couldn't get that discovery. That was really it. I mean, yes, it's true that in that subgroup there were 149 people who admittedly didn't have records for it, but that would have been—in the real world, doing a classification motion on that would have been ridiculous. That wasn't the class we were seeking. We were seeking a much bigger class, and we were seeking the opportunity to take the discovery. Once the judge said we couldn't have the discovery on it, we didn't see any reason to move forward with a classification motion for just a couple—for just 100 people. I mean, technically, you could have had a classification there, but I don't think that that's an argument they made below it. I don't think that that's really taking the case as a whole, that that's really what anybody would do. We were trying to get discovery on that issue, and we didn't get it. The judge prohibited us from getting it, and basically says it's not relevant. You can't use that period yet. So I think that that's not really a realistic view of how class classification moves forward. In addition, it actually is contested as to whether—I mean, possibly—whether you could—whether they could have sent out the faxes without permission to UPS. Judge Harris pointed out why that was the case. Looking at the record and the level of straight people to us, which is required in the discovery on this motion, we should win on that. Because there were at least contested issues, in fact, about that. And, you know, in terms of—if there are no other questions, I will rest our brief. I will say one thing. The thing about individual enforcement, that is clearly in page 95 of the decision. It says individual enforcement is not covered. The only thing covered by that decision was a facial challenge to the FCC's regulation. And it's clear, personally, the government will deal with it, that individual enforcement action, which is something that we'll deal with. In fact, Judge Kavanaugh—Justice Kavanaugh, when he was writing the concurrence in the Supreme Court, that was an individual enforcement action. That was an individual comment. And so if he's saying individual enforcement action is just the FCC, I think there's nothing in the case that says that. We are trying to enforce it as the statute allows us to do, and there is not a challenge to Judge Kavanaugh, Justice Kavanaugh, or any other justices' concurrence on this Court's decision in Gorse recently. It is not a challenge to the facial validity. It is a challenge to the application in this case. And it's clear that that is not covered by—that is not covered by any of that in this report. There's a report error in this document, and it has to be remanded to the district court to consider the substantive arguments. This court can consider the substantive arguments. Probably better to send it back down to the judge's house for that. No other questions? Thank you very much. That seems to me to be a purely legal issue, but okay. Thank you. Yeah, it is a purely legal issue. You're honest to reach it. And if you do reach it, they are not contesting any of the substantive legal arguments that we've made. Thank you. Thank you very much, Mr. Spillane. And we'll reserve decisions as to that matter. And the cross-appeal—